# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALYBEK BEKKULUEVICH ZHUMADYLOV,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>　　　　　Respondents. | Case No. 1:25-cv-01161-EPG-HC<br><br>ORDER DENYING RESPONDENTS' MOTION TO DISMISS, DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECTING CLERK OF COURT TO CLOSE CASE<br><br>(ECF No. 10) |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 6, 8, 9.) For the reasons set forth herein, Respondents' motion to dismiss is denied and the petition for writ of habeas corpus is denied.

## I.

## BACKGROUND

Petitioner is a citizen of Kyrgyzstan who entered the United States on November 20, 2024. (ECF No. 10-1 at 2.[1]) On November 21, 2024, Petitioner was issued a Notice and Order of Expedited Removal pursuant to section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (ECF No. 10-1 at 2, 5–6.) On December 14, 2024, Petitioner claimed fear of returning to his country of origin, and his case was referred to U.S. Citizenship and Immigration

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

Services ("USCIS") for an asylum officer to conduct a Credible Fear interview. (ECF No. 10-1 at 2.) Petitioner had a Credible Fear interview on January 10, 2025, and was issued a Notice to Appear ("NTA") and placed into removal proceedings on January 21, 2025. (ECF No. 10-1 at 2, 8–10.) On February 24, 2025, USCIS issued a notice declining to parole Petitioner from detention. (ECF No. 10-1 at 2, 12.)

On August 22, 2025, an immigration judge ("IJ") held a hearing on Petitioner's asylum application. (ECF No. 10-1 at 2, 14.) The IJ denied Petitioner's asylum application and ordered his removal to Kyrgyzstan but also granted Petitioner's application for withholding of removal. (Id. at 2, 14–22.) No appeal to that decision was filed. (Id. at 2.)

On September 8, 2025, Petitioner filed a petition for writ of habeas corpus challenging his prolonged detention. (ECF No. 1.) On November 7, 2025, Respondents filed a motion to dismiss. (ECF No. 10.) As no certificate of service was attached to the motion to dismiss, and none had been filed subsequently, the Court ordered Respondents to file a certificate of service. (ECF No. 12.) On December 15, 2025, Respondents filed a certificate of service, (ECF No. 13), and explained that the motion to dismiss had not been served on Petitioner and was mailed to Petitioner on December 15, 2025, (ECF No. 14). To date, no opposition or statement of non-opposition has been filed, and the time for doing so has passed.

**II.**

**DISCUSSION**

In the petition, Petitioner challenges his prolonged detention on due process grounds. (ECF No. 1.) Respondents argue that the petition should be dismissed because Petitioner is subject to a final order of removal and thus, Petitioner is subject mandatory detention. (ECF No. 10.)

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'[2] § 1231(a)(1)(A). The statute provides that the Government 'shall' detain noncitizens during the statutory removal period. § 1231(a)(2)." Id. at 578 (footnote added) (some internal quotation marks omitted). "§ 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Id. at 575. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In the motion to dismiss, Respondents contend that Petitioner's removal order became final on September 29, 2025 and therefore Petitioner is within the 90-day removal period during which detention is mandatory. (ECF No. 10.) While Petitioner may have been within the 90-day removal period when the motion to dismiss was filed on November 7, 2025, the 90-day removal period expired on December 28, 2025. Therefore, Petitioner's detention is no longer authorized under § 1231(a)(2). Accordingly, dismissal of the petition is not warranted on the ground set forth in the motion to dismiss.

However, as noted by Respondent, (ECF No. 10 at 3), once the 90-day removal period ends, the government has discretion to continue detaining noncitizens pending removal pursuant to 8 U.S.C. § 1231(a)(6). In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted,

---

[2] "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(B)).

but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

"In *Zadvydas,* the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period." Jennings v. Rodriguez, 583 U.S. 281, 298–99 (2018) (internal citations omitted). Here, although Petitioner has been detained since November 2024, his post-removal period detention has not exceeded the presumptively reasonable six-month period. Further, there is nothing in the record before this Court rebutting such presumption. Accordingly, the Court finds that Petitioner is not entitled to habeas relief at this time.

## III.

## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. Respondents' motion to dismiss (ECF No. 10) is DENIED;

2. The petition for writ of habeas corpus is DENIED; and

3.  The Clerk of Court is DIRECTED to close the case.

IT IS SO ORDERED.

Dated:   **February 2, 2026**                          /s/ Erica P. Grosjean
                                                    UNITED STATES MAGISTRATE JUDGE